# IN THE COURT OF APPEALS OF IOWA

No. 18-2135
Filed March 20, 2019

IN THE INTEREST OF J.C. and M.C.,
Minor Children,

J.S.-C., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother appeals the order terminating her parental relationship with her two sons. **AFFIRMED.**

MaryBeth A. Fleming of MaryBeth Fleming Law Office, P.C., Dubuque, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Kristy L. Hefel, Dubuque, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A mother, Jameela, challenges the juvenile court's order terminating her parental relationship with her sons, seven-year-old J.C. and ten-year-old M.C. Jameela contends the Iowa Department of Human Services (DHS) failed to make reasonable efforts to reunite her with J.C. and M.C. The juvenile court found "significant services were offered to mother, but she refused to participate in them and then chose to move to a different state rendering it impossible for the [DHS] to provide any meaningful services." After reviewing the record,[1] we reach the same conclusion as the juvenile court.

## I.     Facts and Prior Proceedings

The DHS first became involved with the family in February of 2017 after receiving a report of suspected physical abuse by Jameela. The DHS investigated but ultimately did not confirm the report. The following month, the DHS received a second report of abuse, which an investigation confirmed. In April, the DHS received a third report alleging Jameela left J.C. and M.C. in her car unattended while she worked her shift at a Dubuque home-improvement store. Police officers found the children in the car, and a child-abuse assessment found a denial of critical care. Jameela initially agreed to participate in services through the DHS. But when the DHS tried to form an action plan, Jameela refused to sign releases or provide necessary information.

---

[1] We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (citing *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). While we are not bound by the juvenile court's fact findings, we give them weight, particularly when witness credibility plays a role. *Id.* (quoting *A.M.*, 843 N.W.2d at 110).

In May, Jameela stopped taking the boys to school, indicating she intended to homeschool them. The DHS grew increasingly concerned about the boys' safety when workers were unable to locate the family and Jameela refused to disclose their whereabouts. So the DHS sought a temporary removal order that same month. In late May, the DHS finally located J.C. and M.C. after Jameela took them to the Indiana Department of Children Services. Iowa DHS caseworkers traveled to Indiana, retrieved the boys, and placed them in foster care under the juvenile court's May temporary removal order.

In July 2017, after a hearing, the juvenile court adjudicated the children in need of assistance (CINA). At the July hearing, Jameela explained her evasive behavior and refusal to disclose information for coordination of services was motivated by her fear her abusive ex-husband would locate the family. But Jameela also told the juvenile court she no longer feared her ex-husband, and the DHS caseworker testified Jameela had recently been in contact with him. The juvenile court ordered continued foster-care placement, noting the obstacles Jameela's lack of cooperation placed in the way of the DHS coordinating services to address concerns for the children's safety.

In the following months, DHS and Family Safety, Risk, and Permanency (FSRP) workers offered Jameela phone calls and weekly face-to-face visits with J.C. and M.C., but Jameela's attendance was sporadic. J.C. and M.C. told caseworkers they did not want to see or speak to Jameela because they were afraid. But caseworkers alleviated their fears by crafting a safety plan, and J.C. and M.C. participated in visitations when Jameela attended. Court-ordered mental-health evaluations for the boys revealed concerns of extensive abuse at

the hands of Jameela. In the fall of 2017, J.C. and M.C. began therapy in Guttenberg, Iowa. The boys progressed in therapy, and Jameela began attending joint sessions with them. But the boys' therapist recommended against joint counseling with their mother when the boys began to regress as a result of Jameela's participation. By the January 2018 review hearing, the Guttenberg therapist terminated the counseling relationship because Jameela repeatedly showed up at the therapist's office unannounced, and the therapist felt she could not ensure the boys' safety should the relationship continue.

The juvenile court's January 2018 order following the review hearing again set the permanency goal as reunification. To facilitate this goal, the court ordered continued FSRP services and therapy for J.C. and M.C. The court also asked Jameela to consistently schedule and attend visits, comply with therapy, follow the recommendations of the mental-health evaluation she submitted earlier that month, and again ordered Jameela to sign the mental-health releases for herself, J.C., and M.C., to allow the DHS to coordinate services.

In early 2018, the DHS was able to locate J.C. and M.C.'s father, Marcel, despite Jameela's refusal to provide his contact information. Marcel participated in the January review hearing and began visits with J.C. and M.C. in February 2018. After a few months of successful interactions with the boys and compliance with services, the DHS concluded Marcel was a suitable placement option and asked the juvenile court to place J.C. and M.C. with Marcel. So the juvenile court modified the previous dispositional order, and J.C. and M.C. moved to Chicago to live with their father. Marcel arranged for J.C. and M.C. to continue therapy in

Illinois, and their new therapist routinely provided the Iowa DHS updates on J.C. and M.C.'s progress.

Jameela initially contested placement of J.C. and M.C. with Marcel. But at the June 2018 hearing, she withdrew her objection to the placement, instead asking the DHS to arrange therapeutic interactions between her and the boys as a reasonable effort toward reunification.

The juvenile court expressed concern about forcing the boys to interact with Jameela before they were ready. As a result, the court ordered no interactions until the therapist believed interactions would not be harmful to the boys' progress.[2] And in the interim, the court ordered the DHS to contact the therapist to request she provide Jameela with periodic progress updates. The juvenile court set the final permanency hearing for the following month. The permanency goal remained reunification.

In July, after a motion by the State, the juvenile court found providing FSRP services was no longer reasonable because both Jameela and the boys were living outside of Iowa.[3] Scheduling conflicts resulted in continuation of the final permanency hearing until October 10, 2018.

On October 4, 2018, Jameela filed a motion for reasonable efforts. She took issue with the efforts the DHS exerted following the juvenile court's June 2018 order. Jameela pointed to the court's mandate the DHS provide J.C. and M.C.'s

---

[2] That therapist reported the boys made significant progress after being placed with their father and started to "more fully process the trauma they endured at the hands of their mother."

[3] Jameela left Dubuque in mid-2017. At the time of the July 2018 review hearing, she was residing in Chicago.

new therapist with Jameela's contact information and request the therapist provide Jameela updates, asserting she had received no updates. Jameela further requested the DHS provide her with "contact information and medical records relating to the children's therapy, information concerning living arrangements, school records and health care, [and] that the Mother be offered contact with the children either in person or via telephone."

Following a hearing on October 10 and November 1, 2018, the juvenile court terminated Jameela's parental rights under Iowa Code section 232.116(1)(f) (2018).[4] In the order, the court rejected her reasonable-efforts challenge. Jameela appeals.

## II.    Analysis

Jameela only challenges termination on one ground.[5] She argues the State failed to make reasonable efforts to facilitate reunification.[6]

---

[4] Section 232.116(1)(f) permits the court to terminate parental rights when it finds the following:
>    (1) The child is four years of age or older.
>    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[5] In her petition on appeal, Jameela states in passing: "[B]ecause the children are placed with their father, Iowa Code [s]ection 232.116(3)(a) allows the [c]ourt to decline to terminate Jameela's parental rights." Her brief mention of this permissive factor is not sufficient to raise the issue for our review.

[6] In Jameela's petition on appeal, she asserts she "does not dispute [the juvenile court's finding the children could not be returned to her care] as she has had no opportunity to repair her relationship with her children or address the concerns giving rise to their resistance to seeing or talking to her." But as discussed later in the analysis, reasonable efforts toward reunification is part of the State's burden in proving the child cannot be returned to the parent's care. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

The DHS must exert reasonable efforts to reunite children with their parents. Iowa Code § 232.102(6)(b); *In re T.C.*, 522 N.W.2d 106, 108 (Iowa Ct. App. 1994) (citing *In re C.L.H.*, 500 N.W.2d 449, 453 (Iowa Ct. App. 1993)). The reasonable-efforts requirement strives to "both prevent[] and eliminat[e] the need for removal." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). Making reasonable efforts toward reunification is not "a strict substantive requirement of termination"—instead, it is a facet of the State's burden to prove the child "cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). When the elements of termination require reasonable efforts, the scope of the services offered by the DHS after removal "impacts the burden of proving those elements." *In re L.T.*, ___ N.W.2d ___, ___, 2019 WL 982910, at *5 (Iowa 2019) (analyzing reasonable efforts under Iowa Code section 232.116(1)(f)–(h)).

The determination of what services are reasonable varies from family to family. *In re C.H.*, 652 N.W.2d at 147. "Generally, in making reasonable efforts to provide services, the State's focus is on services to improve parenting." *Id.* Jameela asserts the DHS's efforts were deficient because "she has never received any information regarding their school, therapy, or any other aspect of their lives since the hearing on June 7, 2018."[7]

While the DHS is obligated to put forth effort in reuniting families, "a parent must *do* something, must make some effort to move; neither standing still nor

---

[7] In her petition on appeal, Jameela also complains the Iowa DHS did not transfer the case to the Illinois Department of Children and Family Services. To the extent Jameela is arguing transfer of the family's case to Illinois is a service that should have been provided, the argument is not preserved. *See In re L.M.*, 904 N.W.2d 835, 840–41 (Iowa 2017) ("Although DHS must make reasonable efforts in furtherance of reunification, . . . parents have a responsibility to object when they claim the nature or extent of services is inadequate.").

cruise control on a status-quo path will defeat an impending termination." *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015). Since the inception of the DHS involvement with her family, Jameela has repeatedly dismissed its efforts to provide her services to address her mental-health concerns. Jameela did not comply with the court's request for her to submit a mental-health evaluation until the month of the second review hearing, nearly six months after the court's instruction to do so. Not only did Jameela impede the services the DHS attempted to provide her, she placed obstacles in the provision of services to her sons. Jameela interfered with J.C. and M.C.'s therapy, causing their first therapist to discontinue treatment. Jameela refused to provide the DHS information or sign releases to facilitate relative placement. And she refused to sign medical releases for the boys, prompting the DHS to seek court orders granting permission to make decisions and access information necessary for J.C. and M.C.'s treatment.

Additionally, the record does not reveal, nor does Jameela explain, how receiving updates from J.C. and M.C.'s therapist would contribute to addressing her own mental health such that reunification would become a possibility.[8] *See In re A.G.*, No. 17-2024, 2018 WL 1099557, at *3 (Iowa Ct. App. Feb. 21, 2018) ("[T]he record does not show it would have made a difference in the termination decision."). Accordingly, we agree with the juvenile court's conclusion the State met its burden in proving J.C. and M.C. could not be returned to Jameela's care through numerous and reasonable efforts to provide her services to work toward

---

[8] Although we find no impact from the absence of these therapy updates, we do not condone the alleged failure by the DHS to follow through with the juvenile court's directive.

reunification. We affirm the juvenile court's order terminating Jameela's parental rights to J.C. and M.C.

**AFFIRMED.**